1                  UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS

3                               No. 1:18-cv-11674-LTS

4

5    ILYA LIVIZ, et al
                Plaintiffs

6

7    vs.

8

9    GOVERNOR CHARLIE BAKER, et al,
                Defendants

10

11                         *********

12

13                    For Hearing Before:
                     Judge Leo T. Sorokin

14

15                    Motion to Dismiss

16

17                  United States District Court
                    District of Massachusetts (Boston)
                    One Courthouse Way

18                  Boston, Massachusetts 02210
                    Tuesday, January 22, 2019

19

20                         ********

21

22           REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter

23               United States District Court
           One Courthouse Way, Room 5510, Boston, MA 02210

24                  bulldog@richromanow.com

25

```
 1                      A P P E A R A N C E S

 2

 3    ILYA LIVIZ, ESQ.
         Liviz Law Office
 4       156 Sixth Street, Unit 1
         Lowell, MA 01850
 5       (978) 606-5326
         Email: Ilya.liviz@gmail.com.
 6       For plaintiffs

 7    ANNA RACHEL DRAY-SIEGEL, ESQ.
         Office of the Attorney General
 8       Administrative Law Division
         One Ashburton Place
 9       Boston, MA 02108
         (617) 963-2022
10       Email: Anna.rachel.dray-siegel@state.ma.us
         For the State defendants
11
      NICOLE RG PAQUIN, ESQ.
12       Boyle Shaughnessy Law, P.C.
         695 Atlantic Avenue, 11th Floor
13       Boston, MA 02111
         (617) 451-2000
14       Email: Npaquin@boyleshaughnessy.com
         For defendant Tameka Grantham O'brian
15
      SUSAN M. SILVA, ESQ.
16       Peabody & Arnold, LLP
         Federal Reserve Plaza
17       600 Atlantic Avenue
         Boston, MA 02210-2261
18       (617) 951-2100
         Email: Ssilva@peabodyarnold.com
19       For defendant Kristyn Snyer McKenna

20    JUSTIN M. FABELLA, ESQ. (Appearing by telephone.)
         Hinshaw & Culbertson, LLP
21       53 State Street, 27th Floor
         Boston, MA 02109
22       (617) 213-7000
         Email: Jfabella@hinshawlaw.com
23       For defendant Gene Rauhala

24

25
```

```
 1                    P R O C E E D I N G S
 2                  (Begins, 3:30 p.m.)
 3                  THE CLERK:  Civil Docket 18-11674, now before
    the Court and counsel.  Would counsel please introduce
 5  themselves for the record.
 6                  THE COURT:  Mr. Liviz.
 7                  MR. LIVIZ:  Good afternoon, your Honor, thank
 8  you for having me here, Attorney Llya Liviz on behalf of
 9  the parents class.
10                  MS. DRAY-SIEGEL:  Good afternoon, your Honor,
11  Assistant Attorney General Anna Rachel Dray-Siegel on
12  behalf of the state defendants.
13                  THE COURT:  Ms. Dray-Siegel for the state
14  defendants.
15        Okay?
16                  MS. PAQUIN:  Good afternoon, your Honor,
17  Nicole Paquin for the defendant Tameka Grantham O'brian.
18                  THE COURT:  Um, okay.
19                  MS. SILVA:  Good afternoon, your Honor, Susan
20  Silva for the defendant Kristyn Snyer McKenna.
21                  THE COURT:  Okay.  Thank you.
22        So before we turn to the motion itself, Mr. Liviz,
23  um, I'm a little confused about a couple of things.  One
24  is, um, if I have it right, I issued an order, when I
25  scheduled this hearing, to you to file the names under
```

1   seal with addresses of your clients, and then I didn't

2   receive any response to that order, but I know it went

3   out by ECF and you're on ECF.  And so I then issued an

4   order to show cause that directed you to both file the

5   list of names that I directed you to file -- again

6   permitting you to file it under seal because at least at

7   the moment, for the reasons that were advanced in the

8   papers, I thought it permissible, at least

9   preliminarily, to permit the plaintiffs to proceed by

10   way of pseudonym, and to show cause why you hadn't

11   complied with the first order of the court to submit

12   that information.  And that you did respond to that, you

13   filed a lengthy response, but it didn't explain to me

14   why you hadn't complied with the first order, and I

15   didn't discern the list of names and addresses of the

16   plaintiffs who have brought this case.

17        So I'm wondering about those two matters.

18             MR. LIVIZ:  Somebody just coughed.  Can you

19   say the last part please?

20             THE COURT:  Certainly.  Did you have trouble

21   hearing because of the cough.

22             MR. LIVIZ:  I heard everything except the last

23   part.  Somebody --

24        Was that you that coughed?

25             THE COURT:  The Court Reporter doesn't have to

1    answer questions.

2          So my question to you is what, um, do you say

3    about those things?  So --

4          MR. LIVIZ:  All right, I'd like to answer.

5    And I apologize for saying this, I know this is federal

6    court, but in state court I always have to make sure.

7          Are we on record, are we being recorded?

8          THE COURT:  We're not being recorded.

9          MR. LIVIZ:  We're not being recorded?

10         THE COURT:  No, we're not.

11         MR. LIVIZ:  Well I'd like to be on record,

12   your Honor.

13         THE COURT:  Let me explain and then you can

14   ask whatever else you want to say.

15         There is no tape recorder running because in

16   federal court -- before United States District Judges,

17   at least in this district, we don't tape record the

18   proceedings.  There is the Court Reporter who's present,

19   the Court Reporter is taking it down, so it's on the

20   record, so everything I have said has been memorialized

21   by the Court Reporter, everything you have said so far

22   has been memorialized by the Court Reporter, will be in

23   the transcript, everything those three lawyers on the

24   defense side have said.

25         The cough, I assume, in all likelihood, the cough

1   will be reflected in the transcript, because it was a

2   cough and it was a noise, so all statements, utterances,

3   and noises will be memorialized and those will be in the

4   transcript.

5        So it's -- if what you mean by "recorded" is a

6   record, a verbatim transcript -- a verbatim record of

7   what's being said being created?  Yes, in this hearing

8   -- yes, the same as every hearing before me and every

9   other judge in this courthouse.  But to the extent you

10  mean is it being audio recorded in some sense?  I don't

11  believe there's, um -- and so we're clear, because I

12  don't know what -- before the magistrate judges in this

13  courthouse, the ordinary practice actually is not to

14  have a Court Reporter, a physical person typing as we

15  have here, but actually a digital tape recording system,

16  and they do use a digital tape recording system to

17  record almost all proceedings before magistrate judges

18  in this courthouse, and those proceedings which they

19  don't use the digital tape recording are typically jury

20  trials before the magistrate judges and there they use

21  an actual Court Reporter.

22       Does that answer that question?

23            MR. LIVIZ:  Your Honor, I want to thank you

24  for taking a moment to explain that for me.

25            THE COURT:  Certainly.

1        MR. LIVIZ:  For the record I'd like to, um --

2  may I continue?  I'd like to answer you question.

3        THE COURT:  Go ahead.

4        MR. LIVIZ:  But before I answer your question

5  I'd like to let the record reflect -- no disrespect,

6  sir, but I noticed that he was laughing at what I had to

7  say earlier and I'd like to memorialize for the record

8  that you are smiling and laughing, and that there's no

9  other way for me to record it other than to memorialize

10  it on record.  And that I'd also like to note for the

11  record that I'd like this not only to be audio recorded,

12  but I'd also like it to be video recorded as well.

13        THE COURT:  Okay, so -- several things.

14  First, to the extent that you have requested -- I treat

15  what you say as an oral request to have these

16  proceedings video recorded.  That request is denied, um,

17  because as a general matter proceedings in federal court

18  are not video recorded.

19        There is a project that was initiated by the

20  judicial conference of the United States to provide, in

21  certain civil cases, and this is a civil case, that

22  there can be video recording of proceedings, provided

23  the parties agree and this case is part of that opps-in,

24  if you will, to that project.  I don't know if that

25  project -- actually I confess I'm not positive at the

1    moment whether that project is ongoing anymore.  But in

2    any event, it's not been arranged for this proceeding.

3    So at least insofar as today is concerned, without

4    prejudice to future proceedings or hearings in this

5    case, the request to video record is denied.

6        The request to audio record, to the extent it's

7    anything other than what the Court Reporter does in the

8    ordinary course of his or her efforts to memorialize it

9    is recorded.

10       Third, to clarify what you stated for the record

11   where you referred to a "him," but unidentified, I

12   understood from the way you were looking that the "him"

13   to whom you were referring was the Court Reporter who's

14   recording the proceedings, is that correct?

15               MR. LIVIZ:  That's correct, your Honor.

16               THE COURT:  All right.  So that will be in the

17   record.  The record will further reflect that I did not

18   perceive the Court Reporter laughing or in any way

19   engaging in disrespectful conduct as to what was

20   happening in the proceedings, but the record -- your

21   comments stand on the record as to mine, and the record

22   speaks for itself.  In any event, the Court Reporter,

23   who has a very important role in this and every

24   proceeding, has no role with respect to the merits of

25   the proceeding itself.  So go right ahead.

1          MR. LIVIZ:  Yes, your Honor.

2          THE COURT:  But hold on one minute.

3          (Pause.)

4          THE COURT:  So, fine.

5      Mr. Liviz, if you hold on for one minute, there's

6  actually another lawyer who -- I think he must be

7  another lawyer for one of the defendants, who

8  inadvertently apparently went to the Worcester -- the

9  United States District Courthouse in Worcester, instead

10 of Boston, for this proceeding and he's going to call

11 in, so Ms. Simeone's going to call him in.  So if we

12 just pause for a moment, she'll put him on the speaker.

13 He'll be able to hear what you have to say and what

14 everyone else says in the courtroom -- and will be able

15 to hear what I have to say, and we'll allow him to

16 participate by phone under those circumstances.

17          (Clerk dials phone in courtroom.)

18          THE COURT:  So, Mr. Liviz, this is what I

19 think we should do.  We'll continue.  And an some point

20 -- maybe in one second, maybe in a couple of minutes,

21 Mr. Fabella, who I think has appeared for Gene --

22 defendant Gene R-A-U-H-A-L-A, Rauhala, we'll hear him

23 pop in on the phone and say hello.  When he does, I'd

24 ask you to just pause for a minute and I'll just explain

25 to him the context and then you'll be able to proceed.

1           MR. LIVIZ:  Sure.

2           THE COURT:  So when you hear that

3    interruption, it will be probably him calling into the

4    conference call, which will blast over the speakers.  So

5    go ahead.

6           MR. LIVIZ:  Your Honor, again I appreciate

7    your patience and your time to explain everything.  I do

8    want to clarify something for the record -- and again no

9    disrespect to the Court Reporter, but I did want to

10   separate the no-perceived disrespect, which probably

11   wasn't based on the judge's point of view, but he did

12   smile and laugh, and I don't know if you observed that,

13   and I want to make sure that the record is correct on

14   that.

15          THE COURT:  The record is correct that you

16   state that.

17          MR. LIVIZ:  Okay.

18          (Pause.)

19          MR. LIVIZ:  Regarding the first order, which

20   was to produce a list of names and a list of addresses,

21   I'd like to request a side bar to have an ex parte

22   communication.

23          THE COURT:  Why do you want to have an ex

24   parte communication?

25          MR. LIVIZ:  Well, your Honor, if I say it here

1  it would kind of defeat the purpose of having an ex

2  parte communication.

3          THE COURT:  Well you don't have to tell me

4  what the ex parte communication is, but, um, in the

5  ordinary course we conduct -- I guess let's take it step

6  by step.

7          First, there are two issues.  One is I issued an

8  order directing you to make a filing and you didn't

9  respond to that order, so then I issued a subsequent, a

10  second order and I said, "I want you to comply with my

11  first order, file the list, and I want you to explain to

12  me why you didn't comply with my first order."  You then

13  filed something in response to that, but the something,

14  as I understood it, didn't explain at all why you hadn't

15  responded to the first order and it didn't provide the

16  list.

17          So first, why don't you tell me why you didn't

18  respond to the first order, why you then didn't explain

19  to me why you didn't respond to the first order?

20          MR. LIVIZ:  Your Honor, first I respectfully

21  disagree, I did explain why I didn't respond to the

22  court order and I believe my explanation came in the

23  form of a complaint.  And, you know --

24          THE COURT:  You mean the new civil action --

25          MR. LIVIZ:  Sure.

1              THE COURT:  -- in which you sued me, Judge

2    Gorton, and various judges of the United States Court of

3    Appeals for the First Circuit?

4              MR. LIVIZ:  If you look at Document Number 2

5    in this case, I asked for a protective order, and one of

6    the things that I said here, on Page 2 of Document 2 it

7    says, "I was further erroneously removed from

8    representing my clients without any due process to

9    either myself or my clients.  Moreover I was told by

10   people that know them closely" -- and I'm talking about

11   the plaintiffs, "that they were ordered not to speak to

12   me.  The parents I was representing in juvenile court in

13   class action were ordered not to speak to me, their

14   counsel, without any due process offered to them or

15   myself."  I was asking a protective order from this

16   Court to allow me to speak to my clients.

17        So, first of all --

18             THE COURT:  So but that doesn't, Mr. Liviz,

19   explain to me, I --

20             MR. LIVIZ:  Well your Honor, I --

21             THE COURT:  So hear me out.  So when I asked

22   you to --

23             MR. LIVIZ:  Let me just finish my answer

24   because it will answer your question, that's not --

25   that's just part of it, there's Part A, there's Part B,

1   Part C, Part D, and if I finish through E, it will

2   answer your question.

3           THE COURT:  Go ahead.

4           MR. LIVIZ:  So the answer is, first of all, as

5   you know we had a first-class action, now this is a

6   second-class action.  If you actually look at the facts

7   you will actually recognize that it's the same people.

8   So in other words the information that you're asking is

9   actually available if you actually read through the

10  information.  What I did is kind of like I did with --

11  when you see in a juvenile matter if, for example,

12  somebody publicly published the minor, you still use

13  initials even though it's publicly known.

14          THE COURT:  That's why I told you you could

15  file the list of names under seal.

16          MR. LIVIZ:  True.  And so I guess the answer

17  to that question is that the information is already

18  available and, um --

19          THE COURT:  I guess I would tell you this.

20  When the Court issues an order, it says you are to do

21  something, you don't get to fold your arms and say, "I

22  don't need to respond to that because in my opinion the

23  Court either already knows the answer or ought know the

24  answer."  Then if what you're saying is that the people

25  who are the plaintiffs in this case are the people who

1    are the plaintiffs in the first case that you dismissed,

2    then what I would have expected you to do is file under

3    seal a list of the names and you could have said that

4    and --

5              MR. LIVIZ:   I agree with you, your Honor, but

6    there's still a Part C and a Part D --

7              THE COURT:   Go ahead.

8              MR. LIVIZ:   I'm saying I agree with you.

9    There's also other information that I needed to address

10   at sidebar, which is that I believe that one of the

11   class action parents is actually a state agent.  So in

12   other words it's not a parent, but a state agent.  And

13   that's why I wanted to speak to you at side bar.  And I

14   was hoping to speak to you at sidebar.  And I was also

15   hoping to get a protective order that was --

16             THE COURT:   What is a "state agent"?

17             MR. LIVIZ:   A "state agent" is basically like

18   somebody who -- a state agent would be somebody that

19   came in to just test the system.  How else would you

20   test it?  You put somebody in and you see what happens,

21   right?

22             THE COURT:   So you mean that among the people

23   you say you brought this case on behalf of, some of --

24   one of the named plaintiffs, you believe to be actually

25   a person who works for the Commonwealth of

1    Massachusetts?

2              MR. LIVIZ:  Correct.

3              THE COURT:  That that person, working for the

4    Commonwealth of Massachusetts, um, put themselves in a

5    situation as if they had issues with the system that

6    you're challenging that's operated by the Commonwealth

7    of Massachusetts, not because they really had those

8    issues, but in order to test.  Much like in a civil

9    rights case you might -- if a civil rights organization

10   was concerned that a particular landlord wouldn't rent

11   apartments in his or her building to people of a certain

12   category, they might hire someone to go in -- and who is

13   of that category, and apply for -- to try to obtain an

14   apartment to see, and they would go forward with the

15   process, but they're not actually looking for an

16   apartment, they're testing.

17             MR. LIVIZ:  And that's exactly what I wanted

18   to do, I wanted to get your advice and your experience,

19   your Honor, before I move forward to see what the best

20   course of action is on that matter.

21             THE COURT:  Okay, so a couple of things.

22   First of all, I appreciate that you're interested in my

23   advice and experience, but in my role as a judge, I

24   can't -- I don't give legal advice to plaintiffs or to

25   defendants.  Plaintiffs bring cases, defendants defend

1    cases, parties file motions, I look at the motions, I

2    rule on the motions.

3         So we still have, in my mind, for this hearing,

4    three questions, two preliminarily, which are I issued

5    an order which told you to do something, you didn't

6    respond, so I issued a second order and I said, "I want

7    you to explain to me why you didn't respond and I want

8    you to actually respond," so then you filed something,

9    but I still don't know where on the docket, if it's

10   there, is the list of the names and addresses of --

11   under seal, which is fine, of Parents A, B, C, D, and E,

12   that those individual people with those names and

13   addresses are --

14             MR. LIVIZ:  And now I'd like to finish my last

15   part, your Honor.

16             THE COURT:  Go ahead.

17             MR. LIVIZ:  My last part is that I don't feel

18   comfortable releasing information that already most

19   likely is available anyway because I feel that there's

20   obstruction in the courtroom, I feel there's obstruction

21   and I don't feel comfortable.  So I would like to appear

22   and say it on record that I don't feel comfortable

23   producing that information.  That I request to be

24   transferred to a different circuit or to be transferred

25   to Worcester where I'd like to be removed from this

1    court -- and I'd be happy to put it under seal, to

2    another judge, that I believe this courtroom has been

3    already tainted because I already heard that there is

4    some sort of settlement with class action, but that I

5    couldn't find out which class action, and there's

6    something going on that I'm not aware of.  So I don't

7    feel comfortable doing it in this courtroom.  I'd like

8    to be moved to a different court, your Honor.  No

9    disrespect.

10           THE COURT:  Okay, no disrespect taken,

11   Mr. Liviz.  Let me take that apart.

12       So what I understand you to be saying is that you

13   didn't file the list of names and you don't wish or

14   intend to file the list of names of the plaintiffs

15   because, first, you don't have faith and confidence in

16   filing the list of names in this session of this court,

17   and that what you would like to do -- and you're

18   prepared to file the list of names, but only if you're

19   transferred to either a different session of the U.S.

20   District Court for the District of Massachusetts outside

21   Boston or, as described in your motion, to a different

22   circuit.

23           MR. LIVIZ:  Correct, and it's memorialized in

24   Document 57 when I said "I respect this Honorable

25   Court," and I acknowledged the order that had been made,

1    "and I humbly request that the case be transferred

2    forthwith to another circuit for the protection of my

3    clients."  So I did acknowledge your order and I

4    answered it.

5              THE COURT:  You request another circuit.  You

6    mean "another circuit" as in the First Circuit, the

7    Second Circuit, the Third Circuit?  Because I wouldn't

8    have thought of Worcester as a different circuit, I

9    would think that's a different division of this

10   courthouse.

11             MR. LIVIZ:  So when I filed this I put

12   "different circuit" only because I have to appeal now to

13   the First Circuit and I obviously, if you look at the

14   judges named in --

15             THE COURT:  I noticed that.

16             MR. LIVIZ:  -- it includes the First Circuit.

17   And I'd like the record to reflect that there is smiles,

18   and I can see why, but you know what?  I believe this is

19   justified.  It's been a year later and --

20             THE COURT:  Well that one has not been filed

21   for a year.  Last -- so we're clear, last Tuesday, I

22   believe it was -- at least what I think you're referring

23   to, is last Tuesday you filed a --

24             MR. LIVIZ:  It was this year, half a year.

25             THE COURT:  No, but what you filed with

1    respect to the -- in which you named five --

2              MR. LIVIZ:   This was just filed.

3              THE COURT:   -- five judges of the First

4    Circuit, Judge Gorton and myself as defendants, which is

5    the one you were just referring to, I think, that makes

6    it somewhat perhaps awkward to appeal to the First

7    Circuit -- if there is an appeal, that was filed last

8    week.

9              MR. LIVIZ:   Correct.

10             THE COURT:   This case that we're talking about

11   and we're in court on, 18-cv, um -- that was filed back,

12   I think, in August or September?

13             MR. LIVIZ:   It was filed August 9th.

14             THE COURT:   August 9th.

15             MR. LIVIZ:   So it's been five and a half

16   months.  So it's going on half a year now and this is

17   the first day that I got to walk into a courtroom, um,

18   when I made allegations that are warranted for the --

19   for the alleged due process violations.

20             THE COURT:   So we're -- just so that we can

21   move forward so I understand.  I think that, with

22   respect to the two preliminary issues, what I understand

23   the case to be is you're unwilling to file the list of

24   names under seal with the court right now, at least as

25   long as the matter's pending before me, and --

1          MR. LIVIZ:  That's incorrect.

2          THE COURT:  I don't mean to take that -- I

3     just want to describe the facts.

4          MR. LIVIZ:  That's incorrect.  I will abide by

5     this court.  If this court, in other words, says "I

6     order you to do it right now," um, I think that I would

7     produce that because --

8          THE COURT:  I ordered you twice to do it.

9          MR. LIVIZ:  I know, and I said here,

10    "Response," that "I respect this Honorable Court and I

11    acknowledge the order, but I'd like to do it at a

12    different court."  But if this Court really, you know,

13    stresses its --

14         THE COURT:  I'm not transferring this case, I

15    see no basis to transfer this case to a court outside

16    this --

17         MR. LIVIZ:  Then I will produce it within 24

18    hours.

19         THE COURT:  Why not right now?

20         MR. LIVIZ:  Well, first of all, as -- your

21    Honor, if you want me to provide addresses, some of

22    these folks here on this have been ordered not to speak

23    to me.  It's been 5 1/2 months.

24         THE COURT:  Well if they've been ordered not

25    to speak with you, how can they be your clients?

```
 1                    MR. LIVIZ:  Well --

 2                    THE COURT:  In other words you filed this

 3        complaint --

 4                    MR. LIVIZ:  I'd like to answer the question.

 5        I get the question, your Honor.

 6                    THE COURT:  Go ahead.  All right.

 7                    MR. LIVIZ:  In other words, if I haven't

 8        spoken to somebody in 5 1/2 months, how can they be my

 9        client?"  That's a simple question.  And the simple

10        answer is that I have a duty to protect somebody's

11        interest until I have a written authorization of my

12        removal.

13             So I have somebody that signed the document, wants

14        me to represent their interest, and then all of a sudden

15        silence.  Just because there's silence doesn't mean I

16        could walk away, my ethical duty requires me to continue

17        representation until there's a new lawyer that enters

18        their appearance or you, your Honor, allow me to recuse

19        myself from that client.

20                    THE COURT:  So my question to you is this.

21        When you filed this action on, um --

22                    MR. LIVIZ:  August 9th.

23                    THE COURT:  All right, August 9th, there were

24        five plaintiffs named by pseudonym?

25                    MR. LIVIZ:  Yup, A, B, C, D, and E.
```

1          THE COURT:  Well actually in the original

2   complaint you had different -- you had made-up names for

3   them, and then in the amended complaint you changed it

4   to A, B, C, D?

5          MR. LIVIZ:  Right.  Yes, I did.

6          THE COURT:  All right.  So as to those people,

7   did they retain you to bring and authorize you to file

8   this action on their behalf?

9          MR. LIVIZ:  Yes.

10          THE COURT:  All right.  And were you under a

11   bar not to speak to them before you filed this action,

12   did that bar arise before you filed this action?

13          MR. LIVIZ:  No.

14          THE COURT:  It was after?

15          MR. LIVIZ:  Correct.

16          THE COURT:  Then why can't you provide now --

17   not orally in open court, because I'm prepared to let

18   you file it under seal, but in writing, right now, the

19   names and addresses of those people?  And why aren't

20   they here?  Are they here?  That's my first question.

21          MR. LIVIZ:  What?

22          THE COURT:  Are they here?

23          MR. LIVIZ:  Your Honor, I keep getting

24   compound questions here.  First of all --

25          THE COURT:  That's not a compound question.

1    MR. LIVIZ:  Well first you asked about why

2    can't I do it, but then you said, "Are they here?"

3    THE COURT:  Yes, I've changed the question.

4    So the first question is, "Are your clients here?"

5    MR. LIVIZ:  That wasn't the first question,

6    that was like the second question.

7    THE COURT:  I changed it.  Are -- you don't

8    have to answer the other questions at them moment.

9    MR. LIVIZ:  Um, I could answer them.

10    THE COURT:  The question is "Are your clients

11    here?"

12    MR. LIVIZ:  Let me take a look here.

13    (Looks around courtroom.)

14    MR. LIVIZ:  No, they're not.

15    THE COURT:  All right, I ordered you to have

16    your clients here, so why are they not here?

17    MR. LIVIZ:  (Pause.)  Um, I asked the clients

18    to be here.  If you did order them to be here, then that

19    would be my fault.  I did notify them, asked for the

20    clients to be here the way I could --

21    THE COURT:  Not the class, we're talking about

22    the named plaintiffs.

23    MR. LIVIZ:  One client, I believe, is still

24    in, um, a drug, um, a rehab-type of situation.

25    THE COURT:  When was the last time you spoke

1    to that client?

2          MR. LIVIZ:  5 1/2 -- 5 months.

3          THE COURT:  So you don't know whether that

4    person's in rehab or not?

5          MR. LIVIZ:  I spoke to the mother and the

6    mother said that she was and she's unavailable.  I mean

7    it -- whether I know or not, it could change as of

8    yesterday.  The point is, is that I don't have a

9    protective order, so I'm in a situation right now where

10   my whole class action was thrown under the bus and I got

11   no protection from this court.

12         THE COURT:  Okay, it's not your class action,

13   it's the plaintiffs' class action.  You're the lawyer.

14         MR. LIVIZ:  Well, your Honor, my plaintiffs

15   had their kids taken and nobody else stood up for them.

16   I was the first one to actually stand up and do

17   something.

18         THE COURT:  I understand, but we're taking

19   this step by step.

20       So on January 11th I issued an order and which, um

21   -- well actually that's the second order issued.

22             (Talks to Clerk.)

23         THE COURT:  I ordered you -- the first order,

24   I ordered you to file the list of names, I scheduled a

25   hearing, and I said that those people should come today.

1   Not "should," that they "must."

2        So January 4th --

3             MR. LIVIZ:  Can I respond?

4             THE COURT:  -- the last line of the order,

5   Docket Number 55, then you can respond.

6             MR. LIVIZ:  Sure.

7             THE COURT:  "Each individual plaintiff named

8   in the complaint shall appear in person at the January

9   22 motion hearing."  The January 11th order, in which I

10  ordered you to make the filing you hadn't made, um,

11  said, "There is no change in the other provisions of the

12  order issued on January 4th."

13            (Pause.)

14            MR. LIVIZ:  So in other words you're saying

15  that they had to be here?

16            THE COURT:  That's how I understand those

17  words, "Each individual plaintiff named in the complaint

18  shall appear in person at the January 22 motion

19  hearing."

20            MR. LIVIZ:  Well, your Honor, I did not relay

21  the message of them having to be here, that would be my

22  fault, I misread the order on that part.  It did ask

23  them to be here and, um, that's as far as I went.

24       So if they missed -- if they, um -- but again, you

25  know, you have to understand, your Honor, that at this

1  point I don't think that any of my clients even felt

2  that I was doing anything.  In other words, um, I had

3  one of my clients basically in juvenile court, I was

4  removed, and she walked out and looked at me and said,

5  "I think I'm about to throw up right now," and walked

6  away and was instructed not to speak to me.

7          THE COURT:  You were removed from representing

8  this person?

9          MR. LIVIZ:  Correct.

10         THE COURT:  So if you were removed from

11 representing this person, how is this person your

12 client?

13         MR. LIVIZ:  Because they're -- that's a

14 juvenile court matter, this is a federal court matter.

15         THE COURT:  Were you -- why were you removed

16 from representing that person?

17         MR. LIVIZ:  I don't know.  I think because --

18 well I'll tell you, I mean you want me to guess, you

19 want me to speculate?

20         THE COURT:  I don't want you to guess or

21 speculate.  I want to know whatever order issued that

22 removed you as counsel for that person, what did that

23 order say in writing --

24         MR. LIVIZ:  There isn't -- I don't know.

25         THE COURT:  -- or if it was oral?

```
 1                    MR. LIVIZ:  I don't know.

 2                    THE COURT:  So you didn't see or hear the

 3       order?

 4                    MR. LIVIZ:  I was ordered to stay outside of

 5       the room, she was ordered in, and then she walked out

 6       and wanted to throw up, and I said, "What's going on?"

 7       And I couldn't even speak to her.  And I know that when

 8       I spoke to the judge, the judge before, um -- I feel

 9       like that there was a federal investigation that was

10       ongoing and I'm being messed with.  But I don't know.

11                    THE COURT:  You feel like there's a federal

12       investigation of you?

13                    MR. LIVIZ:  Yeah.  No, not of me, but of the

14       system.

15                    THE COURT:  Oh.  All right.

16                    MR. LIVIZ:  I mean again I'm speculating.  But

17       as it stands right now, we're sitting here talking about

18       a court order, it's been 5 1/2 months, nothing's been

19       done, I raised --

20                    THE COURT:  With all due respect, something

21       has been done.  You filed the complaint, this case

22       proceeded in an orderly fashion --

23                    MR. LIVIZ:  No, it did not.  It's been --

24                    THE COURT:  You can disagree with that, and

25       that's fine, I understand that you might not agree with
```

1   the way I've managed the case.

2        You filed, on August 9th, a motion for a

3   preliminary injunction and a motion to certify a class

4   and appoint you as lead counsel.  Summonses were issued

5   on that day to you.  On August 13th, you filed an

6   amended complaint.  On August 13th, I issued an order

7   denying without prejudice your motion for a protective

8   order, denying without prejudice your motion to expedite

9   discovery and set a scheduling order -- in your motion

10  for a declaratory judgment, and I said, "No later than 7

11  days after the filing of proof of service on all

12  defendants, you shall confer with defense counsel and

13  file a joint status report stating your joint or

14  separate positions regarding a schedule for resolution

15  of the motion for a preliminary injunction, a schedule

16  for resolution of the motion for class certification,

17  and any other matters either party wishes to address."

18             MR. LIVIZ:  What day was that?

19             THE COURT:  That was on August 13th, four days

20  after you filed the complaint.

21             MR. LIVIZ:  Okay.

22             THE COURT:  There were various other filings

23  along the way, um, and rulings in timely fashion by me

24  with regard to the various orders, and then I reviewed

25  the submissions of the parties, and on September 26th I

set a schedule.  I said:  "Discovery in the motion for injunctive relief and class certification are stayed pending a ruling on a motion to dismiss that the defendants said they intended to file."  And I set a date for November 13th for the defendants' motion to dismiss with an opposition due 14 days thereafter, and said "I would establish a further schedule after ruling on that preliminary motion to dismiss."

On September 28th, judgment was recorded on the docket of this court that the United States Court of Appeals had denied a petition for writ of mandamus.  Um, and there are various other proceedings as reflected on the docket.

On November 13th, there was a motion to dismiss filed -- two motions to dismiss filed by two of the defendants, or two groups of defendants.

And on November 21st, Mr. Fabella, the lawyer who might appear by telephone, who went to Worcester, filed a motion to dismiss.

And on December 18th, another lawyer, Katherine Kenney, filed a motion to dismiss.

So you are -- lawyers are frequently, and fair enough, unhappy with or disagree with the disposition or management in rulings of the Court, and that's fine, I have no problem with that, we have an adversarial

1    system, but the case hasn't been ignored is my point.

2          So coming back to the matters at hand and I'll

3    summarize where I think we are.

4          As I understand it, there are five named

5    plaintiffs.  To date you haven't complied with my order

6    to file the names and addresses of the plaintiffs.  At

7    least as to one of those plaintiffs, where you

8    represented that plaintiff in juvenile court, for

9    reasons that were not provided to you, the juvenile

10   court apparently removed you as counsel for that person

11   in juvenile court proceedings and instructed --

12              MR. LIVIZ:  I was removed for all of them.

13              THE COURT:  For all five?

14              MR. LIVIZ:  Yeah, I was removed.

15              THE COURT:  All right.  So the five people

16   here --

17              MR. LIVIZ:  No, I'm sorry, four, I was removed

18   from -- I'm sorry, three.  What am I'm thinking?  Um, I

19   apologize for interrupting you, but I did want to -- um,

20   interrupt you in terms of the way this was moving.

21          I also want to mention for the record September

22   12th, Document 13, and October 2nd, Document 31, we're

23   asking for expedited, um, as well as a show cause

24   hearing, and those were ignored.  So there's other

25   hearings that were requested that were not addressed by

1    this court.

2           THE COURT:  And so the record is clear, Docket

3    31 is your "Emergency motion to expedite limited-scope

4    discovery or alternatively issue a writ of mandamus

5    compelling the U.S Attorney to perform their duty

6    pursuant to a certain federal statute."  You filed that

7    on October 2nd.  It wasn't ignored.  On October 3rd,

8    after reviewing that motion, I entered an order denying

9    that motion.

10         So you might disagree with my ruling, fair enough,

11   but it was not ignored.

12          MR. LIVIZ:  What about September 12th,

13   Document 13?

14          THE COURT:  Well ordinarily we don't spend

15   time at oral argument with me telling you what the

16   document says, but I'm happy to review it so the record

17   is clear in this case.

18         On September 12th you filed an emergency motion

19   for "An order to show cause by writ of habeas corpus

20   should not issue for children by" -- and then you listed

21   the various pseudonyms.

22         Putting aside the fact that, just as a practical

23   matter as a lawyer, Mr. Liviz, if you file an -- if I

24   had granted your motion -- well, so first, I ruled on

25   your motion the next day, on September 13th, I entered

an order with respect to that motion, um, resolving it. So it wasn't ignored.  I entered two electronic orders on that date and resolving those motions.  So, one, it wasn't ignored.

Two, if you think about the motion and what you actually wanted, a writ of habeas corpus is an order of the court to bring someone before the court, but if we don't know who it is to bring before the court -- for example, if there's an order to bring -- if what you were looking for was an order to bring the child of Parent A before the court and you have never provided the name and address, even under seal, of Parent A, even if I had issued that order, which I didn't, there would be no way for me to direct anyone to do that, and no way, for example, if the, um, whatever agency the government was going to try to enforce the Court's order to comply.

MR. LIVIZ:  I respectfully disagree, your Honor, you could have just issued an order and said, "fill in the blanks."  I mean obviously it's a parent and there's only -- and the children are listed.

THE COURT:  I guess that misunderstands my view of a writ of habeas corpus.  I don't issue blank writs of habeas corpus for lawyers to fill in the names of the persons to be brought potentially under --

1    actually under court compulsion.

2             MR. LIVIZ:  Your Honor, what would you like me

3    to do?

4             THE COURT:  I've told you what I want you to

5    do.

6             MR. LIVIZ:  Okay, you want me to provide you

7    with names?  I'll do the best I can.  I'll do it by the

8    end of the day, if you'd like me to.

9             THE COURT:  So hold on, I just want to clarify

10   where we are.  There are Parents A, B, C, D, and E in

11   this complaint, right, five parents named as named

12   plaintiffs?

13            MR. LIVIZ:  Correct, your Honor.

14            THE COURT:  All right.  So as to three of

15   those people you say you were representing them in

16   juvenile court proceedings and you were removed by the

17   juvenile court as their counsel and directed not to

18   communicate with them, is that correct?

19            MR. LIVIZ:  All right.  So -- let me make sure

20   I do this.  Okay.

21            (Pause.)

22            MR. LIVIZ:  Correct.  So I believe two of them

23   were, um -- I believe only one was, um -- only one is

24   available as a parent, which I'm -- she's apparently

25   back in Lowell, I'm not sure what the address is.  I'd

1  have to find out what the address is.  One I believe is

2  a state agent.  Another one, I believe, was also an

3  investigation.  Um --

4          THE COURT:  This is what I -- this is what I

5  have wanted and what you have provided, the name, the

6  actual full name and actual address for Parents A, B, C,

7  D, and E.  I've been operating under the assumption, in

8  this case, that I operate in every case, and that is

9  that when a lawyer files a case, that at the time the

10  lawyer filed the case, the persons who were named as

11  plaintiffs in that case have retained that person, the

12  lawyer, to be their lawyer, and authorized the filing of

13  the lawsuit.  Now, based on what you told me, I'm

14  concerned more so as to whether that's happened.

15      So what I want you to do is what I've wanted you

16  to do all along, and I ordered you to do twice and you

17  disregarded, which is (A) file the list of the five

18  names with a name and address.  (B) I want you to

19  identify as to each of those people which ones, if any,

20  you have been, in juvenile court proceedings, removed by

21  the juvenile court as their lawyer.  You could just say

22  -- you don't have to say why, you don't have to

23  speculate, but I want to know --

24          MR. LIVIZ:  Why do you need this information

25  to go forward when I can just tell you right now that

1   the rulings in the Supreme Judicial Court, basically the

2   removal of children for a period of a year plus, by a

3   fair preponderance of evidence, is in violation of

4   ***Santosky?  Santosky,*** that was issued by the SCOTUS, the

5   Supreme Court, says you need it by clear and convincing

6   evidence.  Right now we can get a declaratory judgment

7   that says that the use of --

8          THE COURT:  I don't have --

9          MR. LIVIZ:  Globally I could just make --

10  I could just enter one for basically public policy as a

11  realtor.  I don't even need them.  I could just said,

12  "Hey, they're using the wrong standard."  That's not the

13  correct standard.

14         THE COURT:  The answer to that is very

15  straightforward.  This court, and no federal court, has

16  subject matter jurisdiction unless there's an actual

17  case in controversy, so you actually need a plaintiff

18  who's aggrieved to bring a case.  If what you're saying

19  is the SJC is issuing decisions in violation of the law

20  as announced by the United States Supreme Court, the

21  people in those cases whose decisions -- who lost the

22  case because of that improper ruling, can appeal to the

23  United States Supreme Court to tell the Supreme Court

24  that in your view -- assuming you represent them or

25  whomever represents them could do it, that the Supreme

1   Judicial Court of the Commonwealth of Massachusetts is

2   disregarding what the Supreme Court has said the

3   Constitution requires.

4        MR. LIVIZ:  Your Honor, can I have a

5   protective order then?  Because, like I said, you're

6   saying I need a -- I need a person to bring in.  Well

7   that person is being removed by the state.  That state's

8   saying "No, no, no, no, no, we're going to hide him."

9   Give me a protective order.  If they're going to say

10  "Black people are going to be lynched," am I going to

11  have to appeal to the Supreme court?  If they're going

12  to say "Homosexuals are going to have to wear little

13  bands that says 'We're homosexuals,'" am I going to have

14  to appeal to the Supreme Court?  There's due process

15  violations that's ongoing.  I'm telling you that these

16  are being removed from my cases.

17       I asked for a protective order so I can tell them,

18  "Hey, you've got a protective order," and you're like

19  "Well, I can't do it," so then the state removes me.

20  I'll put myself as an individual that's injured.  I'm

21  telling you right now that there's wrong standards,

22  they're abusing their powers.  I come into a court of

23  law for help and I'm getting bounced, I'm getting

24  bounced back and forth.  I need a protective order in

25  order to get these addresses.  Without the protective

1   order, they're going to be gone, and the next person is

2   going to be gone, because I won't be able to represent

3   them.

4           THE COURT:  Why can't you make the filing

5   without a protective order?  First of all, what is this

6   protective order that you're now describing, what do you

7   want it to say?

8           MR. LIVIZ:  It's simple, that the state court

9   cannot remove me as attorney for the parents.  The

10  parent walked out and looked at me and said, "I think

11  I'm going to throw up."  Why would she say that, your

12  Honor?

13          THE COURT:  I'm not giving you that order

14  without knowing more about it.

15          MR. LIVIZ:  Well can I talk about it?

16          THE COURT:  You don't need that order to

17  comply with my order.

18          MR. LIVIZ:  Yes, I do, because some of them I

19  won't even be able to get in contact because they're

20  ordered not to talk to me.

21          THE COURT:  If there is a state court order

22  that -- that --

23      Does it apply to you or to them?

24          MR. LIVIZ:  The state court order says "You,

25  Parent D, can't talk to me."  You're telling me to go

1   back to the parent and ask for information, but I'm

2   ordered not to speak to them.  I want a court order from

3   you that says "No, you have the right to talk to me and

4   that order was incorrect."  And I feel like I'm being

5   played here.  None of this makes sense.

6           THE COURT:  I want to see -- if you want me to

7   issue an order directing these people to talk to you, I

8   want to see a copy of the state court order that says

9   that.  But in the meantime --

10          MR. LIVIZ:  I can't get it.  I'm not on the

11  case.  It's impounded.  I need a court order from you to

12  do that.

13          THE COURT:  If you are the lawyer for these

14  people, you would know at least their old name and --

15          MR. LIVIZ:  Some of these are no longer --

16  they're representative, but I can't even get a contact.

17          THE COURT:  But you represented them -- you

18  filed this case --

19          MR. LIVIZ:  Correct.

20          THE COURT:  So when you filed this case,

21  presumably they had retained you to --

22          MR. LIVIZ:  Yes, and I have their signature.

23          THE COURT:  And I want you to file their

24  names, their addresses, or at least what you know --

25  what their address was when they retained you at the

1   time you filed -- what their address was at the time you

2   filed this lawsuit, and as best you understand it what

3   their address is now.  You can do all of that without

4   violating any state court orders.  And if you have a

5   written agreement, if you have any sort of agreement --

6           MR. LIVIZ:  Yes, I do, for all of them.

7           THE COURT:  I want to see a copy of that

8   agreement.

9           MR. LIVIZ:  Okay.  Your Honor --

10          THE COURT:  And if you're telling me that the

11  state court order -- you're saying that there are state

12  court orders entered in juvenile court proceedings that

13  prevent you from being their lawyer and you don't know

14  why --

15          MR. LIVIZ:  Right here.  This was filed back

16  on August 9th.

17          THE COURT:  This is what you filed, but it's

18  not a copy of the state court order.

19          MR. LIVIZ:  I don't have access.  It's

20  impounded.  I'm removed.  I can't have access, the state

21  blocked me out.  And you, sir, did not give me any help

22  to get it.

23          THE COURT:  All right.  So, um, I want the

24  list though that I've described.

25          MR. LIVIZ:  Yes, sir.

1          THE COURT:  You haven't given it to me up till

2    now.  If you're going to file it, I want it filed by

3    4:00 p.m. tomorrow on the docket.

4          MR. LIVIZ:  Okay.

5          THE COURT:  You can file it under seal if you

6    wish.

7       Do you wish to file it under seal?

8          MR. LIVIZ:  Um, it would be a lot easier for

9    me to just upload it on ECF, but I mean, um -- is there

10   any way I can just e-mail it?  Your Honor, it would be a

11   lot easier for me if I can just get the e-mail of your

12   clerk and I'll be able to e-mail you -- all five of the

13   signatures that I have, I'll e-mail to her and she

14   should be able to give it to you.  That would be the

15   quickest way to get it to you.  If that's what it takes

16   to --

17         THE COURT:  Okay, you e-mail it by 4:00

18   tomorrow and you mail the paper copy to the court, you

19   drop it in the mail tomorrow, so it's postmarked

20   tomorrow.  So you do both.  I want copies of the paper

21   documents, but you can send it by e-mail as well.  So

22   send it by e-mail tomorrow, but you mail it as well.

23   It's going to be, one, the names and addresses of the

24   five plaintiffs.  Two, it's going to be copies of

25   whatever the retainer agreements are.  You still haven't

1  explained to me why you ignored the orders, but we'll

2  move on at the moment from that.

3       Any of the defense counsel understand why he's

4  been removed as lawyers for some --

5       And, by the way, you're going to also say, for

6  each of these five plaintiffs, which ones you have been

7  removed as counsel, as you understand it, by the

8  juvenile court and, um, which ones are subject to orders

9  not to speak to you.

10      Is that all five or just some of the five?

11          MR. LIVIZ:  Um, so, your Honor, one moment.

12 So here -- that's the throw-up.  Let's see.  Then that

13 one.  Um, another one said I was fired.  And then, um,

14 sued me for bad representation.  So that's one, two,

15 three, and -- um, I think that was it.

16      And what was the other one?  What happened to the

17 other one, why did I get removed from that one?  I'm

18 trying to think.  Oh, the other one was because -- the

19 reason I know it was an investigation is because, um,

20 I'm filing my motions and then all of a sudden I see the

21 jaw drop trying to remove the motion and the statement

22 made "The state cannot sue itself."  And, um, I prepared

23 my SJC filing and all of a sudden I don't know what

24 happened, there was, um -- but I was not even allowed to

25 advocate.

1          I mean clearly there's a background class action

2     going on here that I believe this judge is on that

3     clearly I'm not able to remove myself from this court

4     and my hands are tied, and I mean I can try to appeal

5     it, but I didn't get nowhere with the First Circuit.

6          Um, three, your Honor, that I believe.

7               THE COURT:  So three of the five you've been

8     removed as their lawyer, um, is your understanding by

9     the state court?

10               MR. LIVIZ:  Correct.

11               THE COURT:  Two of the five, your

12     understanding is you have not been removed as the lawyer

13     by the state court, is that correct?

14               MR. LIVIZ:  To the best of my understanding.

15     I have to review it.

16               THE COURT:  And one of the five has sued you

17     for malpractice?

18               MR. LIVIZ:  I don't know what it's titled.

19               THE COURT:  One of them has sued you for some

20     sort of unhappiness that arose out of your

21     representation of him or her?

22               MR. LIVIZ:  Correct, but I believe it's part

23     of the, um, part of whatever's going in the background,

24     because it was not the typical type of disgruntled

25     client, but more of like a pre -- a pre, um -- you know

1    when you tell them "Hey, you need to do this" and then

2    somebody does it and they're doing it because they're

3    supposed to do it without actually wanting to do it or

4    understanding why they're doing it, in other words like

5    a puppet-type of thing. So it didn't really feel like

6    it was a real type of thing. And it was also located in

7    a court that I believe was investigating in the

8    background.

9              THE COURT: So let me -- I want the filing by

10   4:00.

11             MR. LIVIZ: Got it, by 4:00. That's done.

12             THE COURT: And you're going to e-mail it to

13   Ms. Montes or Ms. Simeone and you're going to mail it in

14   tomorrow, the copies, the names, the addresses, the

15   retainer agreements, and the identification as to each

16   person whether you've ever been removed by them, by the

17   state court as a lawyer, whether they fired you or not,

18   or whether they've sued you or not, as to each of the

19   five. And these, um -- because I have to say I'm

20   concerned -- the reason I'm asking about this is I'm

21   concerned as to whether these people -- whether you can

22   actually -- (A) whether these people authorized you to

23   bring this lawsuit and (B) whether you can actually

24   represent these people.

25             For example --

1          MR. LIVIZ:  I'm concerned too, your Honor.

2    I'll be more than happy to just get rid of them.  I

3    could just file myself as a realtor.  I could represent

4    myself.  This declaratory judgment needs to be placed.

5    They're violating a Supreme Court's order that you have

6    to have clear and convincing evidence to be able to

7    separate parents and children for long periods of time.

8    You've got a year and a half based on a preponderance of

9    the evidence.  You can't do that.  That's unlawful.

10         THE COURT:  That brings us to the final

11   question and the reason for the hearing, which is Rule 8

12   of the Federal Rules of Civil Procedure requires a

13   complaint to be a short and plain statement of the

14   claim, and here you filed a, um, a complaint that spans

15   199 pages without exhibits.  And so, um, you know the

16   reason we're here is the defendants have said

17   essentially, "Judge, this is not a short and plain

18   statement and we can't meaningfully respond to this."

19         What do you say to that?

20         MR. LIVIZ:  First of all, your Honor, I

21   respectfully disagree, we're not here because of that,

22   because only one defendant actually met with me pursuant

23   to Local Rule 7.1 that requires meaningful conference.

24   And I specifically in my e-mail -- and I'd like to

25   direct your attention, since we're shifting gears here,

1  if we can go to -- um, if we can go to Docket Number 49,

2  um, and -- if we can go to Document 49, we'll see that

3  it's basically an Exhibit A that I attached.

4          In Document 49, if we look, for example, at Page

5  3, it says, for example, the state, who's represented by

6  Assistant Attorney General Anna Rachel Dray-Siegel,

7  says, um, pursuant to Federal Rule of Civil Procedure 8,

8  "Please consider this communication to present my

9  attempt to confer regarding State defendants'

10  anticipated Rule 8 motion to dismiss."  And I respond,

11  "Dear Anna Rachel Dray-Siegel, I believe we can make a

12  compromise.  I'm willing to rewrite, summarize, or put

13  in different words anything that you don't understand."

14  And notice I said "I'm willing to rewrite."  She wrote,

15  "The complaint is far too lengthy and confusing to

16  provide them with appropriate notice of the claims

17  against them and an opportunity to respond.  If we break

18  down what you wrote it translates to (1) too lengthy,

19  (2) too confusing or an appropriate notice of claims,

20  (3) an opportunity to meaningfully respond."  And I put

21  "(1) Too lengthy."  "Would creating bullet points or

22  providing me with Cliff notes like summarize and resolve

23  the problem?"  And notice again I offered to rewrite it.

24  I still can offer to rewrite it.  So this is not a

25  proper Rule 8 before the court.

1          THE COURT:  There are two ways to do that.

2     You can talk to opposing counsel, you can find out what

3     the issues are and then you can reach some sort of an

4     agreement, and then you file a revised complaint.

5          MR. LIVIZ:  I did that.

6          THE COURT:  No, the one that you filed that's

7     the operative complaint right now is 199 pages.  You

8     talked to her.  Agreed.  But if in fact, after reading

9     her motion, okay, you feel that it is confusing and too

10    lengthy, what you do is you propose, "Judge," you could

11    write an opposition, say it complies with Rule 8, and if

12    you think it doesn't, "Here is a 15-page much shorter

13    streamlined focused complaint," and we'll offer that.

14    But all I have in front of me is either you're correct,

15    it complies with Rule 8, they're correct that it doesn't

16    comply with Rule 8, or if it doesn't comply with Rule 8,

17    I have your assertion that you would provide them Cliff

18    notes, okay, or that you could rewrite it.  But I don't

19    have any rewrite.

20         MR. LIVIZ:  I respectfully disagree with you,

21    your Honor, it's not properly before the Court.  For you

22    to be able to hear this Rule 8 motion, they have to

23    comply with Rule 7.1.  So your first question should be

24    whether they did comply with Rule 7.1?  Before we get to

25    the Rule 8.

1        So I'd like to ask this Court, did they or did

2   they not comply with Rule 7.1?

3            THE COURT:  The way it works is I get to ask

4   the questions.

5            MR. LIVIZ:  Sure.

6            THE COURT:  You can raise the issue about

7   whether -- so what I understand you to be saying to me

8   is you don't think I should hear the Rule 8 motion

9   because you don't think they sufficiently conferred.

10  I'm not going to deny their motion at this stage of this

11  case on the grounds that they didn't sufficiently

12  confer.  The point of conferral is to get the lawyers to

13  talk to each other about the issues.

14       In my experience, though I'm a big believer in

15  Rule 7 and conferral, by the time we get to the motion

16  hearing, if the two of you -- well it's not the two of

17  you, but the two sides, haven't reached resolution as to

18  the issues or narrowing of it, that -- usually it's

19  presented, then in my view, at least in this case, the

20  best course is to proceed to address the motion.  So --

21           MR. LIVIZ:  Can I have 24 hours to rewrite it

22  then or actually a week?  How many pages would you like

23  me to make it, a page?  5 pages?  Two paragraphs?

24           THE COURT:  Oh I don't know how many pages.

25       But what do you have to say about whether it

1  complies with Rule 8?

2         MR. LIVIZ:  I'm sorry, sir?

3         THE COURT:  Do you want to address orally

4  whether the complaint complies with Rule 8?

5         MR. LIVIZ:  Your Honor, I am filing a class

6  action based on systemic defects that are alleging three

7  branches of government, both the executive, the

8  legislative, and the judicial, that's three branches of

9  government.  199 pages is not enough.  And this motion

10  is frivolous, it should not have even been filed in

11  court, because everything is organized, it's -- it's --

12  it has a table of contents, and it makes sense.  In

13  other words it shouldn't -- the question should be why

14  are we even here when it clearly outlines what the

15  defects are?  And it has references to state -- to

16  federal Supreme Court law that says what's happening is

17  illegal.  It's unlawful.

18         THE COURT:  Do you know the difference between

19  a "brief" and a "complaint"?  This is --

20         MR. LIVIZ:  I'd like to answer your question.

21  A brief is a memorandum, you know it talks about -- it

22  justifies.  A complaint is factual assertions.  And in

23  this you have additional information, but I try to limit

24  it with footnotes.  And so the answer is, could I have

25  redacted it further?  Yes, I could.  But because it's a

1    complaint that alleges -- a novel complaint that hasn't

2    been filed before -- we have childrens' class actions

3    that have been filed before, we don't have a parent's

4    class action, and that I believe filing a complaint

5    without a memorandum would not be fair to file before

6    the Court.  I made it to make it easier for the Court

7    and my opposing counsel so that they can better

8    understand it.

9         If I was to file it with just assertions, as you

10   say, it would not be as easy to understand, it would not

11   make as much sense, and I believe it would make sense to

12   actually request -- whether by brief or memorandum, to

13   support why the complaint can even go further past Rule

14   8, because it still has to abide by Rule 12(b)(6) of

15   being plausible.

16        As we know in, um, the new standard that came out

17   with the Supreme Court that requires for a claim of

18   relief to be plausible --

19             THE COURT:  Yes.

20             MR. LIVIZ:  -- I couldn't show it to be

21   plausible without actually writing it in the way that I

22   did.  So it's one of those Catch 22s, fail at Rule 8 or

23   fail at 12(b)(6).  I guess it could have been done

24   separately where you have just a complaint and then a

25   brief filed with it to support the complaint, and I

1  could certainly do that, the work is already done.  It

2  would not take me but -- it would not take me but one

3  night to separate it.

4           THE COURT:  Okay, let me hear from the

5  defendants.  Thank you, Mr. Liviz.

6      First, do any of you have any insight into why

7  Mr. Liviz has been ordered not to represent some of

8  these plaintiffs in juvenile court?

9           MS. DRAY-SIEGEL:  And I have no information

10 indicating that he has been forbidden or a court order

11 to that or any information pertaining to that.

12          THE COURT:  So you just don't know either?

13          MS. DRAY-SIEGEL:  No, I don't know either way.

14          THE COURT:  And is that the same for the other

15 two?

16          MS. PAQUIN:  Likewise, your Honor.

17          MS. SILVA:  Yes.

18          THE COURT:  Okay.  So it may be absolutely

19 correct, but it's simply a matter about which you don't

20 know?

21          MS. DRAY-SIEGEL:  I have no information

22 indicating one way or the other.

23          THE COURT:  Okay.

24      One of my concerns is adjudicating a case in which

25 -- and the reason I want the names is where there's

1  questions, and now there's more questions about the

2  capacity or the authority of counsel to represent some

3  or all of the plaintiffs.  So that hopefully will be

4  resolved by what I receive tomorrow, or if it causes

5  further questions or matters to be inquired into, then I

6  will -- there will just be another order and we'll brief

7  that or what have you.

8       But do you have any general views about that which

9  you wish to speak now?

10            MS. DRAY-SIEGEL:  Yes, your Honor.  Even if we

11  do know who the actual plaintiffs are in this suit, um,

12  we still feel -- the state defendants still feel that it

13  violates Rule 8, and furthermore that, as a result of

14  those violations, that they rise to the level of

15  egregiousness that this case should be dismissed without

16  providing an additional opportunity to amend the

17  complaint.

18            THE COURT:  Well briefly explain to me why you

19  think it violates Rule 8?

20            MS. DRAY-SIEGEL:  Um, well for example, your

21  Honor, you highlighted the length, it's 199 pages, 568

22  paragraphs, it enumerates 22 causes of action, but in

23  addition to mere length, um, he made the complaint

24  averments, um, they're not short, they're not plain,

25  they're not simple or direct.  I went into greater

detail in my motion.  But just to highlight a few of the
pleading deficiencies that the State defendants believe
are characteristic of the amended complaint as a whole.

It contains sweeping assertions that are divorced
from actual factual allegations.  For example, Paragraph
2 is a summary of real news that makes broad and
unsubstantiated claims about the socioeconomic status of
parents who are involved with the Department of Children
and Families, about the social workers, et cetera.  It
makes allegations, um, about parents and the Department
being forced to receive chemical treatments to treat
their alcoholism.  It makes very sweeping, very
generalized things that are not tethered to any
allegations regarding a specific defendant or indeed
even a specific plaintiff.

The amended complaint is also confusing, it
appears to ask this Court, in one part, to overturn a
Supreme Court decision, and that's at Paragraph 37.  It
appears to contain paragraphs that are directly copied
from complaints in other proceedings that have nothing
to do with this one, and that would be Paragraphs 439
and 478.

It advances numerous premature legal arguments.
For example, at Paragraphs 203 to 210, it spends 6 pages
anticipatorily advancing a tangential argument about why

1   it is not framed as a class action on behalf of the

2   children.  It liberally quotes from federal acts without

3   again directly tethering them to any sort of

4   allegations.  We know that a pleading is not an

5   appropriate place to raise these sorts of arguments or

6   bring all this legal analysis into the foray.

7         It also attempts to incorporate a large variety of

8   irrelevant background material, for example at one point

9   it incorporates by reference a 93-page motion that was

10  filed by Attorney Liviz in another unrelated matter and

11  it purports to incorporate by reference materials that

12  may be filed in the future in this case.

13        And overall all of this, and together with some of

14  the other deficiencies that we have highlighted in our

15  motion to dismiss, do not adequately inform the

16  defendants what the alleged misconduct is.  He doesn't

17  tie that to specific facts.  Again we don't know who the

18  plaintiffs even are.  Our hands are tied in terms of

19  trying to respond to this very lengthy complaint.

20              THE COURT:  Let me ask you a different

21  question.

22              MS. DRAY-SIEGEL:  Yes.

23              THE COURT:  It's a proposed class action?

24              MS. DRAY-SIEGEL:  Yes.

25              THE COURT:  For counsel to -- for any lawyer

1   in any proposed class action, it needs to be approved by

2   the Court in order to represent the class.

3              MS. DRAY-SIEGEL:  Yes.

4              THE COURT:  The issues that we've discussed

5   here today give me concern about whether Mr. Liviz could

6   be certified to represent a class, especially if he's

7   been sued by one of the members of the class, and about

8   his representation and if the State court in some cases

9   has, um, determined that he's not appropriate to

10  represent some of these people in juvenile court

11  proceedings.

12       So what, if any, significance would that have if I

13  came to that conclusion -- and maybe it's premature to

14  address that question, but what significance does that

15  have vis-a-vis -- does that have any significance

16  related to the viability of the -- I mean if it's not a

17  class in theory, I mean assuming it's viable, it could

18  proceed with respect to the named plaintiffs, right?

19             MS. DRAY-SIEGEL:  Your Honor, I think in that

20  case it would still violate, we would have these

21  fundamental --

22             THE COURT:  Right, it doesn't solve Rule 8.  I

23  understand.

24             MS. DRAY-SIEGEL:  Right.

25             THE COURT:  I mean if you're right about Rule

1    8, it at least has to be restated or it's dismissed.

2    But if it -- but what is the significance to the case,

3    at least as to the named plaintiffs' claims, if there's

4    that problem with the class?  Does that just mean a

5    different lawyer might have to represent the class or

6    does that mean -- does that have some significance with

7    respect to the actual individual claims of the

8    individual plaintiffs, assuming that there are

9    individual claims?

10            MS. DRAY-SIEGEL:  Yes, um, I'm not quite sure

11   how to answer that, your Honor.

12            THE COURT:  Fair enough.

13            MS. DRAY-SIEGEL:  Understanding that he's

14   making a wholesale challenge on the Massachusetts child

15   welfare system in general, but still feeling like I

16   don't really know what we're actually talking about

17   here, it's sort of hard to talk about what the impact of

18   there being a class versus just five plaintiffs or some

19   subset thereof.

20            THE COURT:  Do either of the defendants, the

21   other defense counsel, have anything to add to what she

22   has said?  You don't waive anything by resting on your

23   briefs, but if you have something to add, now is the

24   time.

25            MS. PAQUIN:  Your Honor, I'm not sure if I'm

1    answering what you're asking, but I represent defendant

2    O'brian who is a private attorney who does work for the

3    Committee for Public Counsel Services, CPCS, and so I

4    have concerns that if this were a class action, um, I'm

5    not entirely certain that defendant O'brian would be an

6    appropriate defendant.  But I'm not sure that that's

7    what you're really asking about at this juncture.

8    That's certainly something that I would be concerned

9    about if this were certified to be a class.  Because the

10   allegations --

11           THE COURT:  That seems to me it questions --

12   I've stayed the motion for class certification, so it

13   seems to me that would be, um -- at the moment all there

14   is is these capacity questions or questions about the

15   plaintiffs and the Rule 8 motion.  There are -- I

16   can foresee that you might be raising a variety of

17   issues in that regard depending on the shape -- whether

18   the case goes forward and if so what shape it takes.

19   But I think those would be later.

20           MS. PAQUIN:  I would tend to think so, your

21   Honor.  I just wasn't sure exactly how far along the

22   road you were --

23           THE COURT:  Sure.

24       I was wondering, Mr. Liviz, if I came to the

25   conclusion -- which I haven't reached yet, but if I came

```
1   to the conclusion that Mr. Liviz was not a lawyer whom I
2   could authorize to represent the class, what is the
3   significance of that if we get to -- assuming we got
4   over Rule 8 and all of that, what does that do to the
5   claims of the individual -- is that something I
6   shouldn't think about till now or does that have some
7   effect on the claims of the individual plaintiffs?
8               MS. PAQUIN:  Assuming some other attorney was
9   certified to represent the class and had authority to do
10  so, um, I would think that that wouldn't necessarily
11  change the analysis of the claims.
12              THE COURT:  Okay.
13         Anything you want to add?
14              MS. SILVA:  The only thing that I would add,
15  um, in regards to --
16              THE COURT:  Remind me who you represent?
17              MS. SILVA:  I represent defendant McKenna,
18  who's another one of these CPCS attorneys.
19              THE COURT:  Okay.
20              MS. SILVA:  I just would add that, um, after
21  reading the complaint, McKenna isn't identified
22  individually at all in the 21 causes of action.  We
23  believe that we have identified, um, the parent
24  plaintiff who she represented.
25              THE COURT:  "McKenna" is M-C-K-E-N-N-A?
```

1    MS. SILVA: Yes.

2    THE COURT: All right. And so other than the

3 caption, she appears in Paragraph 93, which is just the

4 paragraph that says she's an attorney admitted to

5 practice and where her office is located, and she

6 appears in Paragraph 202.

7    But you're saying she doesn't appear in any other

8 paragraph in the complaint?

9    MS. SILVA: Yes, your Honor.

10    THE COURT: And putting aside Rule 8, is your

11 point "What is she doing here in the complaint?"

12    MS. SILVA: Yes, your Honor.

13    THE COURT: I get it.

14    Okay, anything else you want to add?

15    MS. SILVA: And separate and apart from that,

16 um, just in regards to Attorney Liviz producing the

17 names and addresses under seal, um, we have identified

18 who we believe is the parent plaintiff, um, although

19 from reading the complaint we believe that it was the

20 father or the husband of the parent plaintiff who

21 defendant McKenna represented. So my only comment would

22 be, if the next step of the case -- if the case is going

23 to proceed, defendant McKenna would want to know at

24 least the name of the --

25    THE COURT: I'm not authorizing an ex parte

```
 1   filing.
 2            MS. SILVA:  Okay.
 3            THE COURT:  So we're all clear -- and that's a
 4   good question, because sometimes people are confused,
 5   I'm authorizing Mr. Liviz to file it under seal.  "Under
 6   seal" means it's not public and I'm doing that because
 7   of the nature of the issues at stake in the case and
 8   until I know more about the case I'm prepared to accede
 9   to a lawyer's assertion, somewhat unopposed, that at
10   least in a preliminary way the names of the plaintiffs
11   ought be shielded from public view.  Whether that would
12   persist, I don't know, but it is a policy we follow in
13   certain other kinds of cases.  For example, in special
14   ed appeals we allow people to appeal under pseudonyms,
15   just their initials or something like that, because
16   there's no reason they should have to be publicly
17   identified.  And so I'm allowing him to file it under
18   seal, but "under seal" does not mean ex parte.
19            So all of you -- whatever Mr. Liviz files
20   tomorrow, when he files it, the simplest thing,
21   Mr. Liviz, would be for you to cc all of the lawyers in
22   the case so they receive a copy of what you send to
23   Ms. Simeone.  But in any event, I will direct the clerks
24   to -- when we receive it, to in some way provide it to
25   you.  And if it's not obvious that it's already been
```

1   provided to you, you can inquire.

2        I do not have the intent that it should be ex

3   parte.  I'm not authorizing an ex parte filing.  If

4   someone wants to file something ex parte in this case,

5   they need to file a motion requesting leave to file

6   something ex parte and explaining why there should be

7   something provided to the Court that's not provided to

8   all the other lawyers in the case.

9            MS. SILVA:  Thank you, your Honor.

10           THE COURT:  So, Mr. Liviz, two things.

11           MR. LIVIZ:  Your Honor, I didn't get a chance

12  to respond.

13           THE COURT:  That's why I'm calling upon you,

14  um, because it's an adversarial system.

15           MR. LIVIZ:  Yes, it is.

16           THE COURT:  And now I want to hear what you

17  have to say.  So I'm just directing you that there's two

18  things that I think they discussed.  One is Rule 8.  I'm

19  happy to hear you.  You don't waive your arguments that

20  are in your papers, but I'm happy to hear what you have

21  to say with respect to what they said about Rule 8.  And

22  in addition, I want to know why a person is named as a

23  defendant and in a 199-page complaint with 536

24  paragraphs there's no mention of that person doing

25  anything, no specific factual allegations?

1          MR. LIVIZ:  Your Honor, what about -- what

2    about me pitching the Court for me to be certified?  I

3    mean there were some comments whether I should be

4    certified or not, but I didn't get a chance to respond

5    to that.

6          THE COURT:  You can respond to that issue as

7    well.  I raised that, in fairness, not the Assistant

8    Attorney --

9          MR. LIVIZ:  Well, which order would you like

10   me to go?

11         THE COURT:  You can go in whatever order you

12   want as to those three topics.

13         MR. LIVIZ:  Well we'll start with the good

14   one.  I think that I should be certified because I will,

15   um -- well, I'll tell you --

16         THE COURT:  I'll save you some time.  You know

17   what?  One, I'm not going to rule, at the moment, that

18   you are certified and I'm not going to rule that you're

19   not going to be certified.

20         MR. LIVIZ:  Sir, I want to make a point that's

21   very important, it's going to clarify something for this

22   Court.

23       I've seen -- no disrespect, Attorney McKenna in

24   action in one of the trials that I was doing and I'm

25   sitting there watching and I'm watching and like "This

is not family court, this is your legal right to parent

court," and what I saw is that -- and this is important

because I mention culture and I try to explain it and

it's very important for you to understand, your Honor,

that what I saw is that you have this culture of a

family attorney of 30-plus years is going to become the

judge because they have experience in probate and family

court, and what you have in family court is this

equitable relief, the best interests of the child, and

I'm sitting here watching and I have this equitable

relief stuff going on.  And it's very different in

family court where you have two parents and you can't

split the child in half, but it's very different when

you have the State --

        THE COURT:  Solomon offered that.

        MR. LIVIZ:  Who?

        THE COURT:  King Solomon.

        MR. LIVIZ:  Well I'm sure that's probably good

stuff, I'll have to look it up a little bit later.  But

the point is that, um --

        THE COURT:  That's how he resolved a custody

dispute.

        MR. LIVIZ:  Split him in half?

        THE COURT:  That's what he offered as the

resolution and that's how he resolved the custody

dispute.  He didn't actually split the child in half,
but he proposed splitting the child in half as a method
of resolving the case.

So it isn't necessarily -- it's true that you
can't viably split the person in half, but it doesn't
mean that it isn't something to at least contemplate in
order to discuss this matter.  So you might read up on
it.

MR. LIVIZ:  Your Honor, I'm happy to hear the
Court offer a little bit of relief in terms of, um, that
that was a good point that one must consider, um,
cutting an individual in half as an option, um, although
not a good one.

But what I observed and I try to -- and I will
never forget that moment when I was in court in front
of, um, a juvenile court judge and I said, "Your Honor,
this is not equitable relief in family court, this is
your legal right to parent court," and nobody got it.  I
looked around and neither the lawyers of 20, 30 years,
neither did the judge, and I said, "Holy smokes, it's
that moment," you know that moment when you're by
yourself and it's lonely.  I felt alone.  Because when I
was doing the trial -- and I did my trial on the merits,
no offense, I saw McKenna argue, and I'm watching and
I'm like --

1          THE COURT:   What does this have --

2          MR. LIVIZ:   And I'd like to finish though.

3          THE COURT:   No, no, the question of

4    certification is premature.   I'm not -- I will tell you,

5    going right now to rule that you are certified and I'm

6    not going to rule that you should not be certified to

7    represent the class.

8          MR. LIVIZ:   Sure.

9          THE COURT:   I raised the question because --

10   and I'll be frank with you, that given what you have

11   described for me as to (A) one client -- one of the five

12   named plaintiffs has sued you, and (B) that the state

13   court has removed you as a lawyer for three of the named

14   plaintiffs, and (C) some of the things that you have

15   said in some of the filings, it gives me pause as to

16   whether I think you would be appropriate to be certified

17   to represent the class.   But I will tell you that I'm

18   not deciding on --

19         MR. LIVIZ:   It was a state agent.   I mean I've

20   got to tell you what I was watching.

21         THE COURT:   I'm keeping an open mind and I'm

22   not ruling on that now, because after the discussion I'm

23   satisfied that that question doesn't particularly bear

24   on the issues before me at the moment.   So if and when

25   we reach the question of certifying a lawyer to

1    represent the class, you will have a full and fair

2    opportunity.

3              MR. LIVIZ:  Sure.

4              THE COURT:  So the question I have is, two.

5    One, with respect to McKenna.  McKenna, other than the

6    two paragraphs I mentioned, his name doesn't appear

7    anywhere in the complaint, so how is there a reasonable

8    basis to name that person and why is that person a

9    defendant in this case?

10             MR. LIVIZ:  Sure.  Paragraph 415, failed to

11   advocate for a jury trial.  Paragraph 416, failed to

12   advocate for a speedy trial.  Paragraph 417, failed to

13   advocate for grandparents' rights.  Paragraph 418,

14   failed to ask for a CORI of a social worker.  Do you

15   know I almost got thrown out of court when I started

16   asking the social worker their background.  I asked him,

17   "Do you have any experience with kids?"  There was an

18   objection.  I almost got shot.

19             THE COURT:  I don't see in Paragraph 415

20   Mr. McKenna's name.

21        It's Ms. McKenna, right?

22             MR. LIVIZ:  I could take any one of the --

23             THE COURT:  The complaint stands by its own

24   terms.  So right now Paragraph 415 you say implicates

25   McKenna, but it doesn't say anything about McKenna.

1          MR. LIVIZ:  It says "Globally CPCS attorneys
2    failed to advocate for these rights."  McKenna is a CPCS
3    attorney.  She failed to advocate for these rights.  The
4    way McKenna is connected is by her being a CPCS attorney
5    and CPCS attorneys failed to advocate for these rights.
6          THE COURT:  I understand.
7       With respect to Rule 8, anything else you want to
8    say about Rule 8?
9          MR. LIVIZ:  Um, yes, that again I'm willing to
10   rewrite this and I believe there was ineffective 7.1.
11   And I would rather hear it from this Court to say,
12   "Well, this is what I would want you to do."  Because to
13   me, if you're a CPCS attorney -- and I'm clearly stating
14   lack of effect of jury trial.
15      I was there at the Supreme Court when I filed a
16   request for a jury trial for one of the clients and you
17   know what I heard?  I heard people were getting on the
18   phones and everything and like "What's the big
19   excitement?"  Because I understand that that was a
20   state -- I don't know if it was a state or if it was a
21   federal agent, that basically said they were
22   investigating.  And I'll never forget that moment when
23   she looked at me and said, "Oh, yeah, let's sue
24   everybody, hey, wee," and gave me a High 5.  But she
25   never expected me to sue the Supreme Judicial Court.

1   What they expected me to sue was the DCF, they expected

2   me to sue all these, you know, side people, not

3   realizing that I'm thinking ahead and I'm saying, "Wait

4   a minute, who's rubber-stamping all of this?"  The

5   judge.

6        And right now, your Honor, that's why I filed the

7   rest, is I'm getting bounced around, I'm not getting

8   answered questions.  I know everything I'm saying is

9   correct and I did my homework and I know what I'm doing

10  and I know that if I present to a jury, my jury of the

11  peers is going to rule in our favor because -- it should

12  be a directed verdict, that there's clearly a violation,

13  that for a year and a half, based on a fair

14  preponderance of the evidence, when the Supreme Court

15  said yes, it needs to have clear and convincing

16  evidence?

17            THE COURT:  I think the way you put it was

18  you're "taking the ball to the hoop like Jordan and

19  Bird," wasn't that how you put it?  For a billion

20  dollars.

21            MR. LIVIZ:  Well I would say more like Larry

22  Bird.  Michael Jordan is more like a dunk and I can't

23  touch the net.  So it would be more like a jumper shot.

24            THE COURT:  I got the point that you think --

25            MR. LIVIZ:  Thank you, your Honor.

1              THE COURT:  Okay.  Thank you.

2              MR. LIVIZ:  If I can please just have a moment

3    to rewrite it?  I'll comply with this Court's orders by

4    tomorrow.

5              THE COURT:  So I'm going to take the Rule 8

6    motions under advisement.  Tomorrow, by 4:00, you're

7    going to make that supplemental filing.

8              MS. DRAY-SIEGEL:  Yes, sir.

9              THE COURT:  And we'll go from there.  All

10   right, I will say, um --

11        Yes?

12             MS. PAQUIN:  Your Honor, if I may just add one

13   more point on behalf of Attorney O'brian in regard to

14   the Rule 8 motion?  I did want to clarify that as the

15   amended complaint -- the controlling complaint stands

16   right now, it's not clear also which causes of actions

17   have been pled against Attorney O'brian.  So I just

18   wanted to also make clear that while I do join in the

19   arguments raised by the state defendants, I did want to

20   just make sure that that was clear on the record.

21             THE COURT:  Okay.  Thank you very much.  We're

22   adjourned.

23             MR. LIVIZ:  Your Honor, thank you for having

24   me here.  I just want to say that it's just a pleasure

25   to be here, I've been waiting a long time to be here and

```
 1   I want to thank you.
 2              THE CLERK:  All rise.  This matter is --
 3              MR. FABELLA:  (Over phone.)  Your Honor,
 4   Justin Fabella's on the phone as well, just so the Court
 5   is aware.
 6              THE COURT:  All right, Mr. Fabella, I'm sorry,
 7   I didn't realize you were there.
 8        Is there anything -- you heard what we heard.
 9   When did you come on -- is there anything you want to
10   add or do you rest on the papers?
11              MR. FABELLA:  I just wanted to let you know,
12   your Honor, that I agree with sister counsel and with
13   the points that they made, and I'll rest on my papers as
14   well.
15              THE COURT:  Fine.  We're adjourned.
16              (Ends, 4:50 p.m.)
17
18
19
20
21
22
23
24
25
```

1                  C E R T I F I C A T E

2

3

4          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

5     do hereby certify that the foregoing record is a true

6     and accurate transcription of my stenographic notes

7     before Judge Leo T. Sorokin, on Tuesday, January 22,

8     2019, to the best of my skill and ability.

9

10

11

12     /s/ Richard H. Romanow 1-29-19

13     _____
       RICHARD H. ROMANOW    Date

14

15

16

17

18

19

20

21

22

23

24

25